UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

_____

United States of America,

    Plaintiff,

v.

Ricky W. Mariano (01),

    Defendant.

Criminal No. 11-243 (DWF/SER)

**REPORT AND RECOMMENDATION**

_____

Laura M. Provinzino, United States Attorney's Office, 600 U.S. Courthouse, 300 South Fourth Street, Minneapolis, Minnesota 55415, for Plaintiff.

Daniel L. Gerdts, Esq. 708 North Tyrol Trail, Golden Valley, Minnesota 55416, for Defendant Ricky W. Mariano (01).

_____

The above-captioned case came before the undersigned on February 16, 2012, on Defendant Ricky W. Mariano's (01) Motion for an Order to Compel Production of *Brady* Evidence Withheld by the Prosecution [Doc. No. 292]; Supplemental Motion to Suppress Electronic Surveillance Evidence [Doc. No. 293]; Second Motion to Suppress Evidence Obtained from Unlawful Searches and Seizures [Doc. No. 294]; and Second Motion to Suppress Statements Made by Defendant [Doc. No. 295]. This matter has been referred to the undersigned for the resolution of pretrial matters pursuant to 28 U.S.C. § 636(b)(1)(A) and District of Minnesota Local Rule 72.1. For the reasons set forth below, the Court recommends that Mariano's motions be denied.

**I.     BACKGROUND**

The Indictment Dated August 2, 2011 charges Defendant Ricky W. Mariano (01) ("Mariano") with Theft of Mail Matter, Destruction of Letter Boxes, Conspiracy to Commit

1

Bank Fraud, seven counts of Bank Fraud, and ten counts of Aggravated Identity Theft [Doc. No. 1]. The Superseding Indictment Dated January 10, 2012 adds several charges including two additional counts of Aggravated Identity Theft. [Doc. No. 259]. The Court held a pre-trial motions hearing on October 14, 2011. On November 10, 2011, the Court ruled on all of Mariano's then-pending pretrial motions and issued a Report and Recommendation denying Mariano's suppression motions on November 22, 2011. [Doc. No. 214]; (Report and Recommendation Dated November 22, 2011, "November R&R") [Doc. No. 230]. Judge Donovan W. Frank overruled Mariano's objections and adopted the findings of fact and conclusions of law in the November R&R. (Order Adopting Report and Recommendation Dated January 13, 2012, "Order Adopting R&R") [Doc. No. 262].

Mariano filed the instant motions on February 2, 2012. The Court held a second pretrial motions hearing on the instant motions on February 16, 2012. White Bear Lake Police Department Inspector Jeremy Auren ("Inspector Auren") testified on behalf of the Government. The Court received two exhibits into evidence: 1) Ramsey County Application for Search Warrant and Supporting Affidavit for 3275 Labore Road, Vadnais Heights, Minnesota Dated November 23, 2010 (Def.'s Ex. 10) and 2) Interview of Ricky W. Mariano Taken on 05/18/11, #11009141 (Gov't Ex. 11). Two exhibits were marked for identification: 1) Supplemental Offense/Incident Report Dated May 25, 2011 (Gov't Ex. 12) and 2) Supplemental Offense/Incident Report Dated June 10, 2011 (Gov't Ex. 13). This case is set for trial before Judge Donovan W. Frank on March 12, 2012 at 9:00 a.m. in Courtroom 7C in Saint Paul, Minnesota.

## II. DISCUSSION

The November R&R details the relevant facts underlying the charges against Mariano. *Id*. at 2-10. As such, the court need not reiterate those facts and incorporates them by reference. The facts and analysis below pertain only to the testimony and evidence submitted at the second pretrial motions hearing on Mariano's four instant motions.

### 1. Motion to Compel *Brady* Materials

Mariano asserts that the Government has not yet produced "all agent reports, notes emails, or memoranda of any kind" regarding the paint store clerk who purportedly identified Mariano cashing a stolen check. (Def. Ricky W. Mariano's Mot. for an Order to Compel Production of Brady Evidence Withheld by the Prosecution, "Mot. to Compel") [Doc. No. 292, at 3]. The Government contends that it produced the requested materials (Bates Nos. 00126-00132) on August 15, 2011. (Gov't Resp. to Def.'s Motions, "Gov't Resp.") [Doc. No. 300, at 2-3]. The Government also represents that it has previously produced all other materials Mariano seeks to compel. (Gov't Resp. at 3). Based on the proffer of the Government's counsel, the Court is satisfied that Mariano's assertion that the Government has failed to disclose *Brady* materials is false. As early as October 2011, Mariano demonstrated knowledge of the paint store clerk line-up when he moved to suppress the identification evidence. [Doc. No. 156]. At the previous pretrial motions hearing, the Government stated that it had produced such a line-up, referencing the same Bates Numbers as it did in its response to the instant motions. (Tr. 9-14, 17-18)[1]; *see* (Gov't Resp. at 2-3). Moreover, the Court denied Mariano's motion relating to the paint store clerk line-up as moot because the parties agreed at the first motion hearing that the motion was no longer contested. (Tr. 9-12, 18); (November R&R at 18-19); (Order Adopting

---

[1] Transcript of the Motions Hearing, *United States v. Mariano, et al*, (11CR243), October 19, 2011 [Doc. No. 119] ("Tr.").

R&R). As such, there has been no showing that the Government failed to meet its *Brady* obligations. Mariano's motion is baseless and should be denied.

**2. November 23, 2010 Search**

Prior to the lawful search of Mariano's residence, 3275 Labore Road, Vadnais Heights, Minnesota, 55127, on January 31, 2011, the Ramsey County Sheriff's Office searched Mariano's residence on November 23, 2010, in connection with unrelated drug charges. (Def.'s Ex. 10). A paper copy of the November 23, 2010 warrant and inventory were seized along with Mariano's belongings on January 31, 2011. The Government asserts that it does not plan to introduce any evidence obtained from the November 2010 search, but contends that the fact that the November search occurred is relevant to establishing motive and identity in this case. (Gov't Resp. at 6).

The Court previously determined that the January 31, 2011 search was lawful. (Order Adopting R&R). Mariano has provided no basis upon which to conclude that the paper warrant and inventory from the November 2010 search was anything other than a fruit of the January 31, 2011 search. *Warden v. Hayden*, 387 U.S. 294, 306-07 (1967). Because the Court has already determined that the January 31, 2011 search was lawful, no reason to suppress the November 23, 2010 warrant exists. (November R&R at 10-13); (Order Adopting R&R); *see United States v. Olvey*, 437 F.3d 804, 807-08 (8th Cir. 2006) (summarizing probable cause standard) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Mariano's evidentiary concerns as to prejudice, hearsay, and prior bad acts are entirely separate from the lawfulness of the January 31, 2011 search. Mariano's motion to suppress evidence should be denied.

### 3. Mariano's Statements on May 18, 2011

On May 18, 2011, Mariano was in custody at the Washington County Jail on unrelated drug charges when he was interviewed by several law enforcement officers. Prior to the interview with Inspector Auren and his partner, Inspector Angie Rohow ("Inspector Rohow"), Mariano was interviewed by Washington County Investigator Bill Harrell ("Investigator Harrell") on an unrelated matter. Investigator Harrell retrieved Mariano from his jail cell and bought him to an interview room. Inspector Auren testified that he witnessed the five-minute interview between Investigator Harrell and Mariano in an observation room with a live audio and surveillance video feed. During the interview with Investigator Harrell, Inspector Auren did not observe any threats, promises, physical violence, or other coercive behavior.

After Investigator Harrell concluded his brief interview with Mariano, Harrell brought Mariano into the interview room with Inspectors Auren and Rohow. (Gov't Ex. 11). In response to Inspector Rohow's statement that she was going to read Mariano his *Miranda* rights, Mariano said, "actually, he[2] already read them, so my *Miranda*'s been done." (*Id*. at 0:20-24). Nevertheless, Inspector Rohow insisted that she read Mariano his rights again. (*Id*. at 0:24-28). Inspector Rohow advised Mariano of his right to remain silent, right to counsel, and that anything he said could be used against him. (*Id*. at 0:48-01:22). Mariano responded affirmatively several times. (*Id*.). Inspector Rohow also reminded Mariano that he was free to end the interview at any time. (*Id*. at 0:48-25:22). In response to Inspector Rohow's question as to whether he understood his rights and was willing to talk with law enforcement, Mariano stated, "I would like to defend myself in that regard, thank you very much." (*Id*. at 1:40-44).

---

[2] Because Investigator Harrell had most recently interviewed him, Mariano was most likely referring to Investigator Harrell reading him his *Miranda* rights.

Despite his statements on the audio recording, Mariano asserts that his waiver of his *Miranda* rights was not clear. (Def. Ricky W. Mariano's Second Motion to Suppress Statements, "Def.'s Second Mot. to Suppress Statements") [Doc. No. 295, at 2]. Mariano also cites the absence of a signed waiver of rights form as evidence of the interview's unlawfulness. (*Id*.). Neither argument has merit. Mariano's statement after being read his *Miranda* rights that he wanted to defend himself constitutes a waiver of his *Miranda* rights. (Gov't Ex. 11 at 1:40-44); *see United States v. Cody*, 114 F.3d 772, 766 (8th Cir. 1997) (citing *North Carolina v. Butler*, 441 U.S. 369, 373 (1973) (holding *Miranda* waiver need not be written or explicit)). At no time during the interview did Mariano assert his right to remain silent, request an attorney, or end the interview. (Gov't Ex. 11). Mariano was *Mirandized* adequately. *See Butler*, 441 U.S. at 373; *United States v. Binion*, 570 F.3d 1034, 1041 (8th Cir. 2009); *United States v. House*, 939 F.2d 659, 662 (8th Cir. 1991).

Contrary to Mariano's assertion, the May 18, 2011 interview does not implicate a mid-stream *Miranda* analysis under *Missouri v. Siebert*, 542 U.S. 600, 615 (2004). *Siebert* applies when law enforcement "deliberately used separate interrogations to elicit incriminating statements through belated *Miranda* warnings." *See United States v. Briones*, 390 F.3d 610, 613 (8th Cir. 2005) (citing *Missouri v. Siebert*, 542 U.S. 600 (2004)). In the absence of a "deliberate two-step strategy" to circumvent *Miranda*, *Elstad v. Oregon*, 470 U.S. 298, 309 (1985) rather than the *Siebert* plurality factors determines whether statements made in a second interview are admissible. *See Seibert*, 542 U.S. at 622, (Kennedy, J., concurring).

Here, no facts exist to support Mariano's contention that law enforcement attempted to circumvent *Miranda* through a non-*Mirandized* interview prior to the May 18, 2011 interview with Inspectors Auren and Rohow. Mariano's statement that he was advised of his *Miranda*

6

rights before speaking with Inspectors Auren and Rohow fundamentally distinguishes this case from *Siebert*, which involved an *unMirandized* interview followed 10 to 15 minutes later by a *Mirandized* interview. (Gov't Ex. 11, at 0:20-24); *see* 542 U.S. at 616.

Given that *Siebert* does not apply, an *Elstad* analysis is appropriate. *Seibert*, 542 U.S. at 622. "Statements made after a knowing and voluntary waiver of *Miranda* rights are admissible unless there were earlier unwarned statements resulting from coercion or a calculated effort to undermine the suspect's free will." *Briones*, 390 F.3d 613-14 (citing *Elstad*, 470 U.S. at 309). First, before questioning Mariano, Inspector Rohow thoroughly and clearly read Mariano his *Miranda* rights and insisted upon Mariano's confirmation of those rights. (Gov't Ex. 1, at 02:18-03:43). Second, when asked if he understood his *Miranda* rights and was willing to speak with Inspectors Rohow and Auren, Mariano replied affirmatively and began answering questions. (*Id*. at 1:40-44). Third, neither the audio recording nor Inspector Auren's testimony demonstrated any physical or mental coercion. Mariano's contention that law enforcement attempted to circumvent *Miranda* through a two-part interview or engaged in coercion is simply not grounded in fact. Mariano's statements made during the May 18, 2011 interview were obtained lawfully and should not be suppressed.

**4. Audio Recordings of Conversations with Co-Defendant Sarrah Vail**

Without specifying which recordings he contests, Mariano seeks to suppress recorded phone conversations between Mariano and Sarrah Vail when Ms. Vail was detained at the Sherburne County Jail. Mariano argues that the calls may have been recorded without a court order. At the second pretrial motions hearing, Mariano was uncertain as to whether all of the recorded collect calls he received from Sarrah Vail were preceded by an auditory inmate telephone system notice stating that the phone calls were subject to recording and monitoring.

When an individual is advised that his conversations may be recorded or monitored, yet he proceeds with the call, "all reasonable expectation of privacy is lost." *U.S. v. Eggleston*, 165 F.3d 624, 626 (8th Cir. 1999); *United States v. Lindsey*, No. 10-15 (JNE/JJK), 2010 WL 4822939, at *40-41 (D. Minn. Jul. 20, 2010); *Redd v. United States*, No. 4:08-CV-1459, 2010 WL 840810, at *11 (E.D. Mo. Mar. 11, 2010) (reasoning "the audible prompt at the beginning of each call was adequate notice to [defendant] that his telephone conversations were being recorded and monitored. . . [defendant] implicitly consented to the monitoring and recording of his telephone conversations.").

Mariano's primary concern as to the lawfulness of the recordings was whether Mariano himself answered the collect call and heard the inmate telephone system notice. Yet, Mariano has not identified any recordings that implicate this issue. Moreover, Mariano's counsel had been in possession of all of the recorded phone calls Sarrah Vail made, but had not reviewed them to even determine whether an issue existed. Mariano's counsel seems to have had the time to make this motion, but was unable to take the time to listen to three to four hours of recorded calls to determine whether an issue ever existed. Such is not the stuff of which credible and meritorious suppression motions are based.

At the second pretrial motions hearing, both parties acknowledged that the recordings are not suppressible if they were preceded by an inmate telephone system notice that Mariano himself heard. The parties agreed that if the Government attempts to introduce recorded phone conversations that do not begin with the inmate telephone system notice, Mariano may bring a motion *in limine* to exclude the recordings on evidentiary grounds.

### III. RECOMMENDATION

Based on the foregoing, and all the files, records, and proceedings herein, **IT IS HEREBY RECOMMENDED** that:

1. Defendant Ricky W. Mariano's (01) Motion for an Order to Compel Production of *Brady* Evidence Withheld by the Prosecution [Doc. No. 292] be **DENIED**;

2. Defendant Ricky W. Mariano's (01) Supplemental Motion to Suppress Electronic Surveillance Evidence [Doc. No. 293] be **DENIED**;

3. Defendant Ricky W. Mariano's (01) Second Motion to Suppress Evidence Obtained from Unlawful Searches and Seizures [Doc. No. 294] be **DENIED**; and

4. Defendant Ricky W. Mariano's (01) Second Motion to Suppress Statements Made by Defendant [Doc. No. 295] be **DENIED.**

Dated: February 17, 2012

                                                    *s/Steven E. Rau*
                                                    Steven E. Rau
                                                    U.S. Magistrate Judge

Under D. Minn. LR 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court and serving all parties by **February 22, 2012**, a writing which specifically identifies those portions of this Report to which objections are made and the basis of those objections.  Responses to objections shall be due by **February 27, 2012**.  Failure to comply with this procedure may operate as a forfeiture of the objecting party's right to seek review in the Court of Appeals.  This Report and Recommendation does not constitute an order or judgment of the District Court, and it is therefore not appealable to the Court of Appeals.